UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Anthony Harris,

    Plaintiff,

v.

Maplewood Police Department,
and John Doe, Arresting Officer,

    Defendants.

**MEMORANDUM OPINION
AND ORDER**

Civil No. 17-392 (MJD/SER)

Plaintiff, *pro se*.

Joseph E. Flynn and Tal A. Bakke, Jardine, Logan & O'Brien, PLLP, Counsel for Defendants.

This matter is before the Court on Defendants Maplewood Police Department and John Doe, Arresting Officer's motion for summary judgment [Doc. No. 90]. Plaintiff has not responded to the motion.

I.    **FACTUAL BACKGROUND**

On February 16, 2015, Plaintiff was arrested at the Menards store in Maplewood, Minnesota on suspicion of passing fraudulent or suspicious checks at numerous Menards stores. That day, Plaintiff arrived at the Maplewood Menards store at approximately 6:46 p.m. in a white U-Haul truck. (Eppel Aff. Ex. 2; Sypniewski Aff. Ex. 1; Schoen Aff. Ex. 1.) He was wearing a black jacket

1

and hat and white painter pants. (Eppel Aff. Ex. 3; Sypniewski Aff. Ex. 1 at 16; Henning Aff. Ex. 3.) A Menards employee, Jacob Kalin, assisted Plaintiff with writing up invoices for a washer and dryer. (Sypniewski Aff. Ex. 1 at 10; Kalin Aff. ¶ 2, Ex. 1.) Plaintiff then proceeded to check-out where he presented a check from the account of "DBA Dominque Davison Designs, Dominique Davison Sole Prop" in the amount of $2,535.79 to pay for a washer, dryer and snow thrower. (Sypniewski Aff. Ex. 1 at 27; Eppel Aff. Ex. 5.) Plaintiff then left the store and drove the U-Haul to the loading docks to retrieve the appliances he had just purchased. (Eppel Aff. Exs. 6 - 12.)

After assisting Plaintiff, Kalin went to his desk at which time he noticed his general manager, Rob Eppel, viewing a security email. (Kalin Aff, Ex. 1.) Kalin looked at the email and saw Plaintiff's name and address listed. (Id.) Kalin immediately told Eppel that he had just assisted the person listed on the security email. (Id.) Kalin typed in the product SKU number of one of the units sold to Plaintiff into the store's system and confirmed that the person listed in the security email had the same name and address as the Plaintiff. (Id.) Eppel then contacted the guard shack and the yard manager. (Id.) Eppel also instructed the front-end manager, Clinton Edminsten, to verify whether the check used by

2

Plaintiff had sufficient funds.  (Edminsten Aff. ¶¶2, 3, Ex. 1.)  Edminsten contacted the bank, and confirmed the check used by Plaintiff was bad.  (Id. ¶ 3.)  Edminsten then contacted the Maplewood police.  (Id. ¶ 4.)

At approximately 7:46 p.m., Maplewood Police Officers William Sypniewski, Parker Olding, Zachary Schoen and Sergeant Brian Bierdeman responded to a report from the Maplewood Menards of a check fraud in progress.  (Sypniewski Aff. ¶ 4, Ex. 1; Olding Aff. ¶ 2; Bierdeman Aff. ¶ 2; Schoen Aff. ¶ 2.)  Dispatch had informed the officers that a male who had completed $70,000 worth of transactions with bad checks at other Menards was at the Maplewood store trying to purchase appliances.  (Id.)  The officers were informed the suspect's name was Anthony Harris, and he was described as a black male, thin build, short black hair, wearing a black jacket and hat and white painter pants.  (Sypniewski Aff. ¶ 6, Exs. 1 and 2; Olding Aff. ¶ 4; Bierdeman Aff. ¶ 4; Schoen Aff. ¶ 4.)  Once at the store, Sypniewski went to speak with Eppel, and Bierdeman, Schoen and Olding proceeded to the loading docks to make contact with Plaintiff.  (Sypniewski Aff. ¶ 8, Ex. 2; Olding Aff. ¶ 5; Bierdeman Aff. ¶ 5; Schoen Aff. ¶ 5; Eppel Aff. Exs. 12 and 13.)

Eppel showed Sypniewski documentation concerning several returned checks to Wisconsin Menards stores in November 2014 under the accounts of "DBA Anthony M Harris" or "DBA Harris Designs, Anthony M Harris Sole Prop." Eppel also informed Sypniewski that the check Plaintiff had presented that night was reported as "bad" by the bank. Sypniewski then advised Sgt. Bierdeman and Officers Schoen and Olding that Plaintiff should be taken into custody for check fraud. (Sypniewski Aff. Exs. 1 and 2; Olding Aff. ¶ 6; Bierdeman Aff. ¶ 6.)

Olding and Bierdeman then entered the loading docks from the lumberyard and made contact with Plaintiff. (Olding Aff. ¶ 7; Bierdeman Aff. ¶ 7; Eppel Aff. Ex. 12 at 19:57:59.) A surveillance video of the loading docks shows that when Olding and Bierdeman approached Plaintiff, neither had drawn their service weapon. (See Eppel Aff. Ex. 12 at 19:57:59.) Olding directed Plaintiff to turn around and place his hands behind his back, and as shown in the video, Plaintiff immediately complied. (Id.; Olding Aff. ¶ 9; Bierdeman Aff. ¶ 9.) Plaintiff was then placed in handcuffs. (Olding Aff. ¶¶10-11; Bierdeman Aff. ¶¶ 9-12; Eppel Aff. Ex. 12 at 19:57:59.) Olding and Bierdeman then conducted a pat search while Plaintiff remained standing. (Id.) Plaintiff was then led outside

4

through the lumberyard and placed in the back of Olding's squad car, along with his girlfriend, Francal Jackson. (Sypniewski Aff. Ex. 1; Olding Aff. ¶ 15.) Olding read Plaintiff his Miranda warning, and Plaintiff agreed to talk with the officer. (Olding Aff. Ex. 1 at 3.) Plaintiff claimed that he was performing construction work for Dominique Davis and that he had no idea that the check he used was bad. (Id.) Plaintiff was then transferred to the Ramsey County Law Enforcement Center where he was booked and released pending further investigation. (Sypniewski Aff. Ex. 1 at 3-5, Ex. 4; Schoen Aff. ¶ 12; Bakke Aff. Ex. 2.)

In his Complaint, Plaintiff alleges that after being released, he and Ms. Jackson rode a bus and train through the night because they did not know how to get back to their hotel. (Comp. ¶¶ 5-6.) When they finally made it back to the hotel, hotel staff informed them that they had disposed of their property because the time for them to have checked out had passed. (Id.)

Plaintiff thereafter brought this action pursuant to Section 1983, claiming that he was arrested without probable cause, subjected to excessive force and that his arrest was based on racial profiling.

## II. Standard for Summary Judgment

5

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." Amini v. City of Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986)). The party opposing summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**III.   Discussion**

The Defendants correctly point out that the claims against the Maplewood Police Department must be dismissed as it is not a suable entity subject to suit. See Ketchum v. City of West Memphis, Ark., 974 F.2d 81, 82 (8th Cir. 1992) (dismissal of defendant police department was proper as it was not a juridical

entity, only a department of the city government); Ernst v. Hinchliff, 129 F. Supp.3d 695, 709 (D. Minn. 2015) aff'd 652 Fed. Appx. 479 (8th Cir. 2016) (holding that municipal police departments are not entities subject to suit).

Even if Plaintiff had properly named the City of Maplewood as a defendant, the Court finds that dismissal of all claims against the City and the unnamed arresting officer would be warranted as Plaintiff has failed to demonstrate the existence of genuine issues of material fact that he was arrested without probable cause, subjected to excessive force or that his arrest was based on racial profiling.

**A.     Section 1983 Claims**

"The essential elements of a 1983 claim are (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right."  Schmidt v. City of Bella Villa, 557 F.3d 564, 571 (8th Cir. 2009).

**1.     Lack of Probable Cause to Arrest**

It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments.  In determining whether probable cause exists to make a warrantless arrest, a court will consider whether, based on the totality of the circumstances, the facts would justify a reasonably cautious

police officer's belief that the individual arrested has committed or was committing an offense.

Anderson v. Cass County, Mo., 367 F.3d 741, 745 (8th Cir. 2004) (internal citations omitted.)

The Defendants have submitted undisputed evidence to demonstrate the officers had probable cause to arrest Plaintiff for check fraud at the Maplewood Menards store on February 16, 2015. Menards employees informed the Maplewood Police that Plaintiff was the same individual identified in a security alert put out by Menards Loss Prevention. (Eppel Aff. ¶ 2; Sypniewski Aff. ¶ 9.) Menards employees further informed the Maplewood Police that they had contacted the bank listed on Plaintiff's check to verify whether the account had sufficient funds to cover the amount of the check and learned that the check was bad. (Eppel Aff. ¶ 3.)

Upon arriving at the Maplewood Menards, Officer Sypniewski was given copies of the checks Plaintiff had presented to the Oakdale and Maplewood Menards stores on February 16, 2015 by General Manager Eppel. (Sypniewski Aff. ¶¶ 10 and 11.) Eppel also provided Sypniewski copies of bad checks Plaintiff had presented to Menards locations in Wisconsin in November 2014. (Id. ¶ 12, Ex. 1 at 73, 80, 88, 95, 103, 112, 118, 126 and 131.)

Because Plaintiff has failed to present evidence demonstrating a genuine issue of material fact as to a finding of probable cause to arrest him on the night of February 16, 2015, the Court finds that the Defendants are entitled to summary judgment on the claim that Plaintiff was arrested without probable cause.

### 2. Excessive Force

In the Complaint, Plaintiff alleges that while waiting for his purchases in the loading dock, several officers came running towards him with weapons drawn. (Comp. at 3.) Plaintiff further alleges that the officers were yelling at him to lay on the ground, and that Plaintiff complied with their commands. (Id.) Plaintiff also alleges that while on the ground, three officers used excessive force by way of putting a knee or foot on different parts of his body, restricting his movements and his breathing. (Id.) Plaintiff claims he suffered pain while one officer handcuffed him. (Id.)

Both Olding and Bierdeman assert that no force was used to arrest Plaintiff that night. (Olding Aff. ¶¶ 11-14; Bierdeman Aff. ¶ 15.) In addition, the Defendants have submitted the Menards store video that captures Plaintiff's arrest on the night of February 16, 2015. (Eppel Aff, Ex. 12 at 19:57:57.) Both Olding and Bierdeman have viewed this video and state the video is a true and

accurate depiction of Plaintiff's arrest. (Bierdeman Aff. ¶ 13; Olding Aff. ¶ 14.) This video shows the officers approaching Plaintiff, and that they did not have their weapons drawn. Next, the video shows that Plaintiff immediately put his hands up and turned around, spread his legs and put his hands behind his back so he could be handcuffed. (Eppel Aff. Ex. 12 at 19:57:57-19:58:27.) He was then pat searched and escorted out of the store. (Id. at 19:58:27–20:00:24.) At no time does the video depict the officers using any force to arrest Plaintiff, nor does it show that Plaintiff was forced on the ground.

Because Plaintiff has failed to present evidence demonstrating a genuine issue of material fact as to the amount of force used to effect his arrest, the Court finds that the Defendants are entitled to summary judgment on the claim that Plaintiff was subjected to excessive force by the arresting officers.

### 3. Racial Profiling

Plaintiff further alleges that his arrest was caused by racial profiling in violation of his rights to equal protection under the Fourteenth Amendment. "When the claim is . . . racially-motivated arrest, the plaintiff must normally prove that similarly situated individuals were not stopped or arrested in order to show the requisite discriminatory effect and purpose." Johnson v. Crooks, 326

F.3d 995, 999 (8th Cir. 2003). Plaintiff has presented no such evidence; therefore, to the extent his claim is based on the Equal Protection Clause, such claim fails on the merits. See id.

Further, under the Fourth Amendment, the law is clear that an officer's subjective intent does not invalidate an arrest that is supported by probable cause. Whren v. United States, 517 U.S. 806, 811 (1996) (rejecting argument that an officer's ulterior motive could invalidate police conduct that is justifiable based on probable cause). Here, the Court finds that Plaintiff's arrest was supported by probable cause. Thus, even if Plaintiff had provided some evidence as to the subjective intent of the arresting officers, the Court finds that Defendants are entitled to summary judgment on Plaintiff's claim of racial profiling under the Fourth Amendment.

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment [Doc. No. 90] is **GRANTED**. Plaintiff's Complaint, all the claims stated therein, and all claims that could have been asserted by Plaintiff, including any claims against any of the Defendant John Doe officers, officers, agents, representatives, employees, or insurers (regardless of whether or not they were named Defendants

in the above captioned matter) are dismissed in their entirety, with prejudice, and

on the merits.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: March 28, 2019

s/ Michael J. Davis  
Michael J. Davis  
United States District Court